# Kelly *v*. Cook.

## Conversion.

(Decided October 19, 1916.    Rehearing denied November 14, 1916.
73 South. 220.)

1. **Trover and Conversion; Evidence.**—Evidence of plaintiff's title, defendant's lack of title, the delivery of the cotton to defendant by the husband of plaintiff without her knowledge or consent, demand, and refusal, and of the quantity and value of the cotton, was sufficient to carry to the jury the question as to plaintiff's right to recover the value of the coton.

2. **Same; Insructions.**—Instructions hypothesizing plaintiff's knowingly permitting her husband to deliver the cotton to be applied to the debt of the husband, her ratification thereof, knowingly permitting him to deal with her cotton as his own, and the husband's joint interest therein, being without support in the evidence, were properly refused.

3. **Estoppel; Clothing Another with Apparent Title.**—In order to estop the owner from claiming his property in the hands of a bona fide purchaser from a person clothed by the owner with apparent title thereto, there must have been a fraudulent purpose by the owner, or at least knowledge on his part of the acts of ownership from which acquiescence may be inferred.

4. **Husband and Wife; Agency; Ratification.**—Where, in the absence, and without knowledge of the wife, the husband takes the wife's cotton and delivers it to another, her mere silence after knowledge of the conversion would not amount to a ratification of the taking, or be a waiver of the tort.

5. **Trover and Conversion; Instruction.**—Where the action was for the conversion of cotton, and the defense was partial ownership thereof by plaintiff's husband, a charge asserting that, in arriving at a verdict, the jury may take into consideration the ownership and possession of the land on which the 3 bales of cotton were grown, who bought and paid for the fertilizer used in making the crop, who owned and furnished the mules with which the crop was cultivated, who paid for having the cotton worked, ginned, and who paid for the bagging and ties that went on the cotton, was argumentative and its refusal proper.

6. **Witnesses; Bias; Impeachment.**—While it was error not to sustain objection to the question referring to a witness who had testified for defendant, asked of plaintiff by her attorney, "Whether witness had ever done anything in any way to show he had bad feelings towards, or felt good towards you?" yet such error was rendered harmless where plaintiff answered "I can't do that. I won't expose myself;" since it amounted to a refusal to answer, and it appeared that the only fact testified to by defendant's witness so referred to was a conversation embodied in the predicate laid to impeach another witness.

APPEAL from Monroe Law and Equity Court.
Heard before Hon. W. G. McCORVEY.

[Kelly v. Cook.]

Action by Lizzie Cook against Riley Kelly for the conversion of three bales of cotton. Judgment for plaintiff, and defendant appeals. Affirmed.

After defendant had closed its case, defendant having introduced and examined one McKinley, plaintiff, in rebuttal was asked this question by her attorney, relative to said McKinley:

"Now, Mrs. Cook, has he ever done anything, in any way, to show that he had bad feelings towards, or felt good towards you? If he has, tell these men what it was."

Over objection witness was permitted to state: "I can't do that. I won't expose myself."

The following charges were refused to defendant:

(3) If you believe from the evidence in this case that Mrs. Cook knowingly permitted her husband to deliver the three bales of cotton to Kelly to be applied to the husband's account with Kelly, and by her actions and conduct ratified said delivery, then, in that event, she cannot recover, even if you were to find the title to the cotton to be in Mrs. Cook.

(4) A wife, who knowingly permits her husband to deal with her property as his own, will be estopped to assert her ownership against persons who have dealt with the husband in reliance on his apparent ownership or authority.

(5) Should you find from the evidence that both Mrs. Cook and her husband were interested in the three bales of cotton, you can only award damages for her interest therein.

(6) In arriving at a verdict, the jury may take into consideration the ownership and possession of the land on which the three bales of cotton was grown, who bought and paid for the fertilizer used in making the cotton, who owned and furnished the mules with which this cotton was cultivated, who paid for having the cotton worked, who paid for having it ginned, and who paid for the bagging and ties that went on said cotton.

J. D. RATCLIFFE, for appellant. CHARLES HYBART, and L. S. BIGGS, for appellee.

BROWN, J.—A full statement of the rule governing the introduction of evidence to show bias as impeaching witnesses will be found in *Sexton v. State,* 13 Ala. App. 84, 69 South. 342, affirmed in *Ex parte Sexton,* 195 Ala. 697, 70 South. 1014. It is therefore not necessary to here restate the rule; but we deem it

sufficient to say that the fact that Kelly was the defendant in the case tended to show bias, and the question propounded to the witness Mrs. Cook in rebuttal, while it may have been subject to the objection, at least in part, of calling for a conclusion of the witness, was nevertheless broad enough to elicit evidence tending to show the degree of defendant's bias, such as that the witness and defendant had had a difficulty, or that the defendant had assaulted and beat the witness; and was not subject to the objection lodged against it.—*Haralson v. State*, 82 Ala. 47, 2 South. 765; *Yarbrough v. State*, 71 Ala. 376; Jones on Evidence, 828, 829. We do not hold that the answer of the witness was responsive or material, or that it should not have been excluded on motion; but, the question being one that was calculated to elicit material and competent evidence, the objection to the question was properly overruled, and motion to exclude the answer was necessary if the answer was not responsive or was not material.

(1) There was evidence tending to show that the cotton in controversy was the property of the plaintiff, and that it was delivered to the defendant by the plaintiff's husband without her knowledge or consent. It was further shown without dispute that, if the cotton belonged to the plaintiff, the defendant had no legal claim or right to it. The plaintiff testified that the three bales of cotton averaged 500 pounds each, and further that, when she made demand on the defendant for the cotton, he admitted having it and refused to let plaintiff have it; and the witness Coxwell testified: "That the highest price of cotton from the last of October, 1914, up to the present time, was $8\frac{1}{2}$ cents per pound; that is, middling cotton."

On this evidence and the tendencies above stated, the case was properly submitted to the jury, and the affirmative charge requested by the defendant refused without error.

(2) Charges 3, 4, and 5 were abstract. There was no evidence tending to show that the plaintiff knowingly permitted her husband to deliver the three bales of cotton to the defendant to be applied on the husband's account, or that she, by her actions or conduct, ratified such delivery; nor is there any tendency in the evidence that she knowingly permitted her husband to deal with her cotton as his own; nor is there any evidence or tendency to show that the husband had a joint interest in the three bales of cotton.

[Kelly v. Cook.]

The witness McKinley testified that the plaintiff told him some time in October, 1914, "that she was going to turn her cotton over to Mr. Kelly on her debt, and that Tom Murphy would have to scratch his head to get his;" but the evidence shows without dispute that she owed Kelly nothing, and there is no contention that the plaintiff delivered the cotton to Kelly, or that she consented to its being delivered to him.

The defendant testified: "Mrs. Cook first talked to me about this cotton, that is, to claim it, in December or January. She did not demand this cotton until then. Between the time the cotton was delivered and the time in December or January, Mrs. Cook frequently came to my store and traded with me and said nothing about demanding the cotton, nor indicated that it was not agreeable. She knew I had the cotton and mentioned it to me one time and did not claim it as her own."

(3) If, in fact, the three bales of cotton belonged to the plaintiff, the defendant, in dealing with them, did so at his peril; and while "it is true that the owner of personal property may, by clothing another with the apparent title or ownership and authority over it, estop himself from claimnig the property in the hands of a bona fide purchaser from the person so clothed; but in order to put in operation this estoppel 'something more is required than mere possession on the part of the apparent owner. There must be a fraudulent or deceptive purpose in view, or implied from the special circumstances of the case, on the part of the true owner,' or at least knowledge on his part of the acts of ownership, from which his acquiescence may be inferred."— *People's Savings Bank & Trust Co. v. Holly Mfg. Co.*, 1 Ala. App. 399, 55 South. 929.

(4) The evidence shows that this cotton was taken in the absence of the plaintiff and delivered to the defendant without her knowledge, and the mere silence of the plaintiff after knowledge of the conversion was brought to her did not amount to a ratification of the taking or a waiver of the tort.—*McCarty v. Roswald & Co.*, 105 Ala. 511, 17 South. 120.

There is no evidence that the three bales of cotton were the joint property of Cook and his wife. The plaintiff's contention was that it was her individual property, and her evidence tended to support this theory; while the contention of the defendant was that the property belonged to the plaintiff's husband, and he offered some evidence tending to show this.

12—15

(5) Charge 6 was argumentative and was well refused.

This disposes of the several assignments of error made on the record.

Affirmed.

### ON REHEARING.

On the original consideration of the case, as appears from the opinion heretofore promulgated, the question asked the plaintiff by her counsel on the rebuttal examniation was treated as referring to the defendant in the case. This premise was not correct, and the contention of appellant that it referred to the witness Rose McKinley is granted.

(6) The further contention of the appellant that his objection was well taken and should have been sustained is likewise granted.—*Sexton v. State, supra,* 69 South. 342.

(7) However, while the ruling of the court in this respect was erroneous, we do not think it calls for a reversal of the judgment. The answer of the witness amounted to a refusal to answer on the ground that it would expose the character of the plaintiff. In short, the answer was not responsive; and, no doubt, if motion had been made to exclude this answer, it would have been excluded.

Further, the only fact testified to by the witness McKinley was a conversation embodied in a predicate laid to impeach Mrs. Cook's testimony.

It is not probable that the jury were influenced by the statement of the witness Mrs. Cook in rebuttal, and the ruling of the court, while erroneous, must be presumed without injury.

Application overruled.